<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN BLANOS<br><br>                      Plaintiff,<br><br>v.<br><br>PENN MUTUAL LIFE INSURANCE COMPANY<br><br>                      Defendant. | Civ. No. 09-5174<br><br>**O P I N I O N** |

*Appearances by:*

COMMISA & CAMPANILE, P.C.
by: Carmine David Campanile, Esq.
600 South Livingston Avenue, Suite 206
Livingston, NJ 07039

    *Attorneys for Plaintiff*

McCARTER & ENGLISH, LLP
by: Thomas F. Doherty, Esq. and Christopher S. Mayer, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

    *Attorneys for Defendant*

**<u>DEBEVOISE, Senior District Judge</u>**

       This matter comes before the Court on a motion by Defendant, Penn Mutual Life Insurance Company ("Penn Mutual" or "the Company") to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief

can be granted.  Plaintiff, a former employee of Penn Mutual, contends in his Complaint that the Company (1) breached his employment contract by terminating him on April 30, 2009 and failing to pay his salary for the next two months, (2) committed "fraud in the execution" of his employment contract by making oral representations that a certain number of "producers" would be recruited for a new Penn Mutual branch office that Plaintiff was to oversee but later failing to recruit the requisite number of producers, (3) breached a warranty implied in the employment contract by representing to Plaintiff that he "would enjoy a high standard of living" if he joined the Company but failing to ensure such a standard, and (4) the Company negligently breached its duty to ensure that its agents would not make misrepresentations to him and perform its duties under the employment contract.  In support of his claims, Plaintiff attached to his Complaint a letter dated July 25, 2007 from Penn Mutual Vice President William D. Gruccio in which the company outlined his compensation and benefits.

      In the pending Motion, Penn Mutual contends that the terms of Plaintiff's employment contract, which was incorporated in the July 25, 2007 letter, preclude his claims.  The Court agrees.  Plaintiff's claim that Penn Mutual breached his employment contract runs contrary to the clear language of that agreement, which stated that either party could terminate the employment relationship at any time by providing written notice to the other.  The June 25, 2007 letter attached by Plaintiff to his Complaint contains a similar provision, and thus adds further support to Penn Mutual's Motion to Dismiss.  Plaintiff's second claim – that Penn Mutual committed "fraud in the execution" of his employment contract by failing to recruit a sufficient number of producers after it had agreed to do so – is also belied by the terms of his employment contract, which imposes no such commitment on the Company and expressly disavows any outside representations or warranties.  Plaintiff's claim that the Company breached its warranty that he

"would enjoy a high standard of living" fails for the same reason.  Finally, Plaintiff's claim that Penn Mutual negligently breached its obligation to ensure that its agents would not make misrepresentations to him and perform its duties under the employment contract is duplicative of his first two claims.  The only alleged misrepresentations referred to in Plaintiff's Complaint were the purported statements by representatives of Penn Mutual that the Company would recruit producers for its new branch.  As discussed above, the employment contract expressly states that it was not entered in reliance on any such statements or warranties, and Plaintiff has not established that the Company breached that agreement.

## I. BACKGROUND

Plaintiff is a registered investment advisor.  Prior to joining Penn Mutual, he was employed by another insurance company.  Presumably in connection with his duties at that company, Plaintiff in June of 2007 was introduced to Frank DePaola, the managing partner of Penn Mutual's Edison, New Jersey branch office.  Over the following month, Mr. DePaola and Plaintiff negotiated an agreement whereby Plaintiff would leave his employer and join Penn Mutual as the Managing Associate of a newly-opened branch office in Tarrytown, New York.

On June 20, 2007, Plaintiff joined Penn Mutual and executed a Full-Time Soliciting Agent's Contract ("Employment Agreement") memorializing the terms of his employment as an "Agent" of the Company.  Among other terms and conditions, the Employment Agreement stated (using all-capital letters for emphasis) that:

> EITHER AGENT OR [PENN MUTUAL] MAY TERMINATE THIS AGREEMENT WITH OR WITHOUT CAUSE BY GIVING WRITTEN NOTICE OF TERMINATION TO THE OTHER, AND AGENT HEREBY AGREES THAT THIS AGREEMENT MAY BE TERMINATED BY EITHER PARTY HERETO WITH OR WITHOUT CAUSE.

Additionally, Plaintiff's Employment Agreement contained a provision stating that "[t]his agreement terminates all prior … agreements between Agent and either [Penn Mutual] or a general agent, manager, regional director or financial service corporation of [Penn Mutual]." Finally, the Employment Agreement included a provision titled "Integrated Contract and Amendment" that expressly disavowed any prior understandings or warranties between the parties by stating that:

> This document constitutes the entire agreement and understanding concerning the subject matter hereof between the parties hereto and supersedes and replaces all prior negotiations, proposed agreements and agreements, written or oral. Each of the parties hereto acknowledges that neither party, nor his or its agent or attorney, has made any promise, representation or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the other party to execute this instrument, and acknowledges that neither party executes this instrument in reliance on any such promise, representation or warranty not contained here. This agreement may be amended only in writing.

Plaintiff began work for Penn Mutual on July 1, 2007. On July 25th, Penn Mutual Vice President William D. Gruccio forwarded Plaintiff a letter stating that his yearly salary would be set at $145,000. The letter incorporated the terms of the Employment Agreement and noted that Plaintiff's pay was contingent on his continued employment with Penn Mutual, stating:

> This is not an employment contract and its continuance is subject to meeting minimum performance standards and subject to the terms of your Agent's Contract. All compensation is paid providing you remain employed with Penn Mutual at the time the compensation is earned.

Finally, the letter stated that "Penn Mutual reserves the right to terminate this Management Associate Agreement at any time by providing you with written notice of same." Plaintiff consented to the terms outlined in the July 25, 2007 letter by signing it under the heading "agreed to" on the same day it was sent.

Over the next two years, the relationship between Penn Mutual and Plaintiff gradually deteriorated. Plaintiff contends in his Complaint that his decision to join the Company was

4

based largely on representations by Mr. DePaolo that Penn Mutual would recruit "a critical mass of 15 to 20 producers" to work with the new office. (Compl. at 2, ¶ 7.) He claims, however, that Penn Mutual failed to do so despite his repeated requests. (Compl. at 2-3, ¶¶ 13, 14.)

The tension between Plaintiff and Penn Mutual apparently reached a breaking point in April 2009. That month, the Company informed Plaintiff that he would be terminated effective April 30th. Neither party asserts that Plaintiff was terminated for cause, and there is no indication that he committed any form of misconduct during his tenure at Penn Mutual.

On August 26, 2009, Plaintiff brought suit against Penn Mutual in the Superior Court of New Jersey. As discussed above, his Complaint included four causes of action. In the first, Plaintiff claimed that his "[c]ontract was for two years and [Penn Mutual] failed to pay Plaintiff for the remainder of the contract." (Compl. at 3, ¶ 3.) Based on that contention, Plaintiff requested that the Court award damages to make up for his lost salary for May and June 2009 – a total amount of $24,166.67. (Compl. at 3, ¶ 4.) Plaintiff's second claim, captioned "fraud in the execution," asserted that:

> Defendant undertook certain obligations with respect to [Plaintiff's] contract based upon the representations made to Plaintiff.
>
> […]
>
> Defendant and its agents knew that they could not perform but continued to induce Plaintiff to remain by telling him that everything would be all right.
>
> […]
>
> Plaintiff relied upon the representations of the Defendant to his detriment.

(Compl. at 4, ¶¶ 2, 5, 7.)

Similarly, Plaintiff's third claim dealt with alleged statements made by Penn Mutual and its employees in inducing him to enter the Employment Agreement. Specifically, Plaintiff averred

5

that "Defendant and its agents warranted to Plaintiff that the undertaking would be performed and that Plaintiff would enjoy a high standard of living," but failed to make good on those promises. (Compl. at 5, ¶¶ 2, 3.) Finally, Plaintiff asserted a claim for "negligence," stating that "Defendant owed a duty to Plaintiff to ensure that its agents would not make any misrepresentations and to ensure that the Contract would be performed according to its tenure [sic]. Defendant breached that duty to Plaintiff."

On October 9, 2009, Penn Mutual removed the litigation, alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. The Company submitted the pending Motion to Dismiss on November 2, 2009. Plaintiff filed written opposition to the Motion, and both parties appeared at oral arguments on December 21, 2009.

## II. DISCUSSION

In its Motion to Dismiss, Penn Mutual argues that Plaintiff's claims are barred by his Employment Agreement. With respect to Plaintiff's claim that the Company breached its obligations under that contract by failing to pay his salary for the two months immediately following his termination, Penn Mutual notes that both the Employment Agreement and the July 25, 2007 letter (on which Plaintiff relied throughout his Complaint) stated that he could be terminated at any time and his receipt of periodic wages was contingent on continued employment with the Company. Similarly, Penn Mutual argues that Plaintiff's third cause of action – in which he alleges that the Company breached various warranties conveyed to him by its agents and employees – must be dismissed because the Employment Agreement expressly disclaims such warranties. Finally, Penn Mutual asserts that Plaintiff's second and fourth causes of action – which allege fraud and negligence, respectively, and therefore purportedly sound in

tort law – are barred by the "economic loss doctrine," which states that "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 316 (N.J. 2002).

In opposition to Penn Mutual's Motion, Plaintiff submitted a sparse letter brief that included little argument beyond restating the allegations in his Complaint. In his main argument opposing Penn Mutual's request that his breach of contract and breach of warranty claims be dismissed, Plaintiff contends that the terms and conditions of his employment were set by the July 25, 2007 letter rather than the Employment Agreement, and that the provisions of the latter stating that he could be terminated any time and disclaiming all warranties are therefore inapplicable. In contrast, Plaintiff conceded that his fourth cause of action – in which he alleged that Penn Mutual negligently breached a duty to ensure that its employees and agents did not make misrepresentations to him – was "somewhat stretching it," and consented to the dismissal of that claim. Thus, only Plaintiff's breach of contract, fraud, and breach of warranty claims remain at issue. In determining whether to grant Penn Mutual's Motion and dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must apply the standard of review applicable to such requests.

**A. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer

evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

When a Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, leave to amend and reassert the claims contained in that Complaint is ordinarily granted. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). A claim may be dismissed with prejudice, however, if amending the Complaint would be futile. Id. "Futile," as used in this context, means that the Complaint could not be amended to state a legally-cognizable claim. Id. (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

**B. Plaintiff's Claims**

Under that standard, it is clear that Plaintiff's claims must be dismissed with prejudice. The breach of contract claim seeking wages for the two months immediately following Plaintiff's termination is barred by the clear language of the Employment Agreement, which stated that either party had the right to terminate Plaintiff's employment at any time, with or without cause, by serving written notice on the other. Plaintiff's contention that the July 25, 2007 letter, rather than the Employment Agreement, was the operative contract between the parties is belied by the clear language of the letter, which stated that "[t]his is not an employment contract and is … subject to the terms of your Agent's Contract." Even if Plaintiff's employment had been governed by the July 25, 2007 letter, that document made it clear that his wages would only be paid while he was employed by the Company, stating "[a]ll compensation is paid providing you remain with Penn Mutual at the time the compensation is earned." In light of those provisions, Plaintiff's claim that Penn Mutual breached his employment contract by failing to pay wages after his termination is meritless, and must be dismissed with prejudice.

Plaintiff's second claim – which he styles as "fraud in the execution" of his contract – is not a model of clarity. To the extent that claim asserts that Penn Mutual failed to fulfill its obligations under the Employment Agreement, it is a garden-variety breach of contract cause of action and does not sound in tort. Plaintiff claimed in the second count of his Complaint that "Defendant undertook certain obligations with respect to said Contract based upon the representations made to Plaintiff," but gave no detail as to the nature of those obligations or the representations on which they were supposedly based. (Compl. at 4, ¶ 2.) Presumably, the "representations" and "obligations" cited in the Plaintiff's fraud claim referred to his allegation, stated earlier in the Complaint, that Penn Mutual and its employees had promised to recruit a certain number of "producers" for the new branch. See (Compl. at 2-3, ¶¶ 7, 13, 14.) Regardless of the nature of the "representations" at issue, any breach of contract claim based on such statements – which the Plaintiff does not contend were included in the terms of the contract – is barred by the express terms of the Employment Agreement, which states:

> This document constitutes the entire agreement and understanding concerning the subject matter hereof between the parties hereto and supersedes and replaces all prior negotiations, proposed agreements and agreements, written or oral. Each of the parties hereto acknowledges that neither party, nor his or its agent or attorney, has made any promise, representation or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the other party to execute this instrument, and acknowledges that neither party executes this instrument in reliance on any such promise, representation or warranty not contained here.

Plaintiff's second claim might also be construed as an allegation that he was fraudulently induced to enter the Employment Agreement. If true, that assertion – which is generally used as an affirmative defense to contract liability – would render the Employment Agreement void. Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990). In this case, however, any allegation of fraud in the inducement is conclusively rebutted by the acknowledgments Plaintiff made when

executing the Employment Agreement. As discussed above, that contract clearly stated that it "supersede[d] and replace[d] all prior negotiations, proposed agreements and agreements, written or oral." Moreover, Plaintiff acknowledged by signing the Employment agreement that Penn Mutual had not "made any promise, representation or warranty whatsoever, express or implied, not contained" in that contract. Therefore, regardless of whether Plaintiff's second count asserts a cause of action for breach of contract or fraud in the inducement, that claim is barred by the express terms of the Employment Agreement and must be dismissed with prejudice.

An examination of Plaintiff's third claim compels a similar result. The Employment Agreement stated that Penn Mutual had not "made any … warranty whatsoever, express or implied." Having agreed to that contract, Plaintiff may not assert a breach of warranty cause of action. Therefore, the third count of Plaintiff's Complaint must be dismissed with prejudice.

As a final matter, the Court notes that even if Plaintiff had not voluntarily dismissed his negligence claim, that cause of action would be barred. In his Complaint, Plaintiff claimed that Penn Mutual "owed a duty to Plaintiff to ensure that its agents would not make any misrepresentations and to ensure that the Contract would be performed according to its tenure [sic]." The latter portion of that allegation – that the Company did not perform on the Employment Agreement "according to its tenure – appears to be duplicative of Plaintiff's breach of contract claims, which have already been rejected. To the extent that Plaintiff is asserting a tort action outside of the contract itself, he has pointed to no set of facts that would impose a duty on Penn Mutual outside of the obligations contained in the Employment Agreement. Therefore, his negligence claim would be precluded by the economic loss doctrine. Saltiel, 788 A.2d at 316.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's claims are dismissed in their entirety with prejudice.

The Court will enter an Order implementing this Opinion.

 **s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  January 12, 2010